**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLINCHFIELD COAL COMPANY,
Petitioner,

v.

RUTH MULLINS, Widow of Kermon

Mullins, Deceased; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 97-2194

On Petition for Review of an Order
of the Benefits Review Board.
(96-1359-BLA)

Submitted: December 22, 1998

Decided: January 20, 1999

Before NIEMEYER and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Timothy W. Gresham, PENN, STUART & ESKRIDGE, Abingdon,
Virginia, for Petitioner. Vincent J. Carroll, Richlands, Virginia, for
Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Clinchfield Coal Company (Clinchfield) appeals the award of survivor's benefits to Ruth Mullins, the widow of Kermon Mullins (Mullins), pursuant to the Black Lung Benefits provisions of the Mine Safety and Health Act, 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1998). The Administrative Law Judge (ALJ) awarded benefits upon finding that Mullins suffered from pneumoconiosis and that the pneumoconiosis was a substantially contributing factor leading to his death. 20 C.F.R. § 718.205(c)(2) (1998). Clinchfield appealed, and the Benefits Review Board (Board) affirmed. Because we find that substantial evidence supports the ALJ's factual findings, we affirm.

Ruth and Kermon K. Mullins were married for forty-eight years, until Kermon's death in 1994. Mullins worked in the coal mining industry for thirty-six years between 1941 and 1982. Most of his work was in or around coal preparation plants; he generally worked as a table floor operator, and was subject to sporadic exposure to heavy volumes of coal dust as well as constant exposure to moderate amounts of dust. He retired in 1981 because of his pulmonary health, and was treated regularly until his death for his pulmonary condition. An autopsy was performed following Mullins's death on January 11, 1994.

Clinchfield does not dispute that it is the responsible operator or that Mullins worked thirty-six years in the industry. The company does dispute that pneumoconiosis contributed significantly to Mullins's death. The ALJ found that Ruth Mullins had sustained her burden of proving the causal connection between Mullins's death and a pulmonary impairment related to coal dust exposure. The Board rejected Clinchfield's arguments on appeal and affirmed the award of benefits.

2

This Court reviews a decision awarding or denying benefits to determine whether substantial evidence supports the ALJ's factual findings. Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is more than a scintilla, but is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). In assessing whether there is evidence to support the ALJ's factual findings, we must address whether the ALJ has analyzed all relevant evidence and explained his rationale in accepting certain evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997). The legal conclusions of the ALJ and the Board are reviewed de novo. Dehue Coal Co. v. Ballard , 65 F.3d 1189, 1193 (4th Cir. 1995).

Because Ruth Mullins filed her claim for survivors benefits in 1994, her claim is adjudicated under 20 C.F.R. § 718.205 (1998). Under the provisions of the regulation relevant in this case, death is considered to be due to pneumoconiosis where pneumoconiosis was a substantial contributing cause of death or death resulted from complications of pneumoconiosis. § 718.205(c)(2).

Clinchfield first argues that the ALJ did not adequately discuss or give sufficient weight to the report and deposition of Dr. Caffrey. Dr. Caffrey's opinion, expressed by report and deposition, was that the amount of coal worker's pneumoconiosis from which Mullins suffered did not contribute to or cause his death.

An ALJ hearing a black lung claim has the power to make credibility determinations and weigh the evidence presented. Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949 (4th Cir. 1997). The ALJ can disregard an opinion that is not supported by a sufficient rationale. Milburn Colliery Co., 138 F.3d at 533 n.9. Although he did not specifically mention Dr. Caffrey's deposition, the ALJ did discuss Dr. Caffrey's opinion that Mullins's pneumoconiosis was too mild to have caused his death, which Dr. Caffrey stated was caused by diffuse interstitial fibrosis of the lungs with superimposed acute bronchopneumonia. The ALJ found the pathology report and opinion of Dr. Jones more persuasive.

Dr. Jones concurred with other pathologists that Mullins suffered from pneumoconiosis at his death. He concluded that the pneumoco-

3

niosis "significantly complicated" Mullins's coronary artery disease and weakened his cardiac capacity. Based on the interrelationship of the cardiovascular and pulmonary systems and his examination of the pathologists' tissue specimens, Dr. Jones diagnosed simple coal worker's pneumoconiosis (cwp), emphysema, diffuse interstitial pneumonitis, and cytomegalovirus pneumonitis. As Dr. Jones reported, all the pathologists agreed that Mullins had cwp with enough exposure to coal dust to cause pneumoconiosis, that he had an obstructive lung disease that was not caused by smoking, and that acute pneumonitis had led to his respiratory failure and subsequent death. The attending physicians, Drs. Tholpady and Smiddy, agreed that Mullins suffered from coronary artery disease. Both the attending physicians and Dr. Kahn, the National Institute for Occupational Safety and Health pathologist, agreed that pneumoconiosis contributed significantly to Mullins's death. Dr. Jones discounted the opinions of the physicians employed by Clinchfield as failing to account for Mullins's long exposure to coal dust, the cwp lesions in his lungs, and the absence of a smoking history. He noted that the attending doctors had failed to find any other cause for the pulmonary problems, despite their efforts to do so. Jones reasoned that Mullins's pneumoconiosis and the associated chronic lung disease so weakened Mullins's pulmonary capacity that he could not fend off the cytomegalovirus found in the autopsy, which normally only invades "severely compromised or weakened individuals." We conclude that the ALJ acted properly in weighing the detailed, reasoned report of Dr. Jones against the more conclusory opinion of Dr. Caffrey, contained in his report and deposition testimony.

Clinchfield next argues that the ALJ substituted his judgment for Dr. Tomashefski's medical opinion that Mullins's death was due to idiopathic pulmonary fibrosis, with pneumoconiosis playing no role. The ALJ concluded that Dr. Tomashefski ignored Mullins's long history of exposure to coal dust in finding the disease to be idiopathic, or of unknown origin. Clinchfield asserts that, in fact, Dr. Tomashefski did opine with reasonable medical certainty that the fibrosis was not consistent with pneumoconiosis or caused by exposure to coal dust. The company also argues that "idiopathic pulmonary fibrosis" is a specific medical disease and that, contrary to the ALJ's assertion, Dr. Tomashefski did acknowledge Mullins's coal

4

work and exposure to dust, by noting that he had worked for thirty-five years in and around coal mines.

The qualifications of experts are significant indicators of the reliability of their opinions. Milburn Colliery Co. , 138 F.3d at 536. The ALJ noted that Dr. Tomashefski is not an internist. In addition, the ALJ concluded that Dr. Tomashefski's opinion was less persuasive because he did not assess how Mullins's thirty-six year exposure to coal dust related to the fibrosis that led to his death. Both are permissible considerations for the ALJ, and do not amount to substitution of his opinion for a medical opinion. Therefore, the Board was correct in holding that this argument lacks merit.

Finally, Clinchfield asserts the ALJ erred in giving little weight to the opinions of the doctors who did not discuss the effect of Mullins's cardiac problems on his death: Doctors Adelson, Tomashefski, Naeye, and Caffrey. Clinchfield charges that the ALJ did not hold the doctors who found a relationship between pneumoconiosis and Mullins's death to the same standard.

Clinchfield's argument entitles it to no relief. The ALJ gave less weight to Dr. Tomashefski's report because he was not an internist and did not take into account the effect of Mullins's long exposure to coal dust in explaining the fibrosis of his lungs. Dr. Naeye's opinion was somewhat discounted because of the tentative nature of his conclusion that a cytomegalovirus might have caused the fibrosis. The ALJ was entitled to accept the opinion of Dr. Jones over that of Dr. Caffrey as being a better reasoned assessment that considered and accounted for all the relevant medical evidence. As for Dr. Adelson, his autopsy report found pneumoconiosis as well as interstitial pneumonitis compatible with cytomegalovirus pneumonitis. Dr. Adelson did not identify either of these conditions as the cause or substantially contributing cause leading to Mullins's death. Therefore, his report is not contrary to the ALJ's findings.

The ALJ analyzed all relevant evidence and explained his rationale in assessing the evidence. Sterling Smokeless Coal Co., 131 F.3d at 439. The legal conclusions of both the ALJ and the Board are rational and consistent with relevant law. Dehue Coal Co. , 65 F.3d at 1193. Therefore, we affirm the award of benefits to Ruth Mullins. We dis-

5

pense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6